[No. 1819-2.    Division Two.    July 16, 1975.]

In the Matter of the Marriage of KATHLEEN ADA WAGGENER, Petitioner, and CONRAD DANIEL WAGGENER, Respondent.

*Edward M. Lane* and *Murray, Scott, McGavick, Gagliardi, Graves, Lane & Lowry*, for petitioner.

*John R. Simmons*, for respondent.

PEARSON, A.C.J.—This is an appeal from the custody provisions of a decree dissolving the marriage of the parties. We allowed the appeal to proceed as a petition for extraordinary writ, in accordance with CAROA 57(b)(1).

The decree in question awarded custody of the parties' 4-year-old son to the respondent father, Conrad Waggener. Petitioner, Kathleen Waggener, contends on appeal that one of the relevant factors mandated by RCW 26.09.190 in awarding custody was not considered by the trial court, and that under the circumstances presented the court should have appointed an attorney for the child, as allowed by RCW 26.09.110, or should have utilized the investigative procedures authorized by RCW 26.09.220.

There are as yet no authoritative decisions concerning these provisions of the relatively new marriage dissolution act, RCW 26.09.220, *et seq.*, which became effective in 1973.

The important question now raised is to what extent a trial court is compelled by the act to invade the traditional role of the trial advocates and demand that evidence be produced on the various factors affecting custody which are set forth in RCW 26.09.190, but which the trial counsel have not seen fit to develop.

Because of the importance of this question to future custody disputes, a detailed resume of the facts is necessary.

Respondent is a career United States Air Force pilot. He and petitioner were married in Texas in late 1967. At the time of the marriage, petitioner had completed 2 years of college. It was understood between them that she should finish her college education after the marriage. During the more than 5 years of the marriage, the parties lived in Rochester, New York; San Antonio, Texas; Denver, Colorado; Okinawa; Laredo, Texas; San Antonio, Texas (a second time); and Tacoma, Washington. Throughout these moves, petitioner did pursue her college work and finally received her degree in business administration from the University of Puget Sound in December of 1974. She has been accepted to the U.P.S. Law School for the fall term of 1975.

Conrad Waggener, Jr. was born April 21, 1971, and lived with both parents until mid-1974. The parties were having marital difficulties some time prior to coming to Tacoma in June 1973, and were separated in June 1974. The separation was amicable and was occasioned by respondent's duty assignment to Hawaii. Petitioner testified that by agreement respondent took their son to Hawaii. Almost immediately thereafter this action was commenced.

In her initial petition, petitioner asked that custody of their son should be awarded to respondent. Within a month, however, an amended petition was filed in which she asked for his custody. She explained that a combination of emotional strain, domination by her husband, and a belief that the custody award would be "temporary" caused her initial petition. Also, she testified that since her husband had been able to spend so little time with his son in the past, she thought this would give them a chance to get acquainted.

Shortly before trial, respondent returned to Tacoma. At this time petitioner learned that respondent had been living in Hawaii with another woman for several months and that her son was calling the woman "Mother Bev." Respondent explained that the woman was a registered nurse and a working airline stewardess, and that the two intended marriage[1] as soon as the dissolution of respondent's first marriage was accomplished.

For reasons which do not appear on the record, the child's relationship to his prospective stepmother was not developed by either trial counsel.[2]

The findings entered by the trial court relating to custody simply provide:

Both parties are fit and proper persons to be awarded the custody of their minor son. However, the welfare of the child being paramount in the court's mind, the court finds that the welfare and interests of the son are best served and vouchsafed by granting to the father, Conrad Daniel Waggener, the care, custody and control of his minor son, with the petitioner, Kathleen Ada Waggener, being granted liberal rights of visitation . . .

Prior to entry of the findings and decree, petitioner retained different counsel, who filed a motion for reconsideration of the court's oral decision requesting the court to appoint an attorney for the child, and to institute an investigation into his prospective home environment and his relationship with the prospective stepmother. It was argued that RCW 26.09.190 required such action. That statute provides, in part:

The court shall determine custody in accordance with the best interests of the child. The court *shall* consider all relevant factors including:

. . .

(3) The interaction and interrelationship of the child with his parent or parents, his siblings, *and any other person who may significantly affect the child's best interests;*

---

[1] We are informed that respondent has married this woman subsequent to the entry of the decree.

[2] Counsel for petitioner on appeal was not the trial counsel.

(4) The child's adjustment to his home, school, and community; and

(5) The mental and physical health of all individuals involved.

(Italics ours.)

In denying the motion for reconsideration and in rejecting the contention that an attorney should be appointed or an investigation undertaken, the trial court commented to the effect that nothing from the evidence adduced at trial suggested the necessity for such measures.

After entry of the decree, this appeal was taken, and shortly thereafter Mrs. Waggener filed a petition for modification of the decree, supported by a lengthy affidavit of a child psychologist. After two examinations, the psychologist concluded that the child was experiencing severe emotional difficulties in his present environment and should be returned to petitioner's custody. This affidavit has not been considered by the trial court because it had lost jurisdiction due to the pendency of the instant appellate proceedings. Accordingly, petitioner moved this court for an order remanding to the trial court for hearing on the petition to modify. We denied the motion and elected to hear the merits of the case on an accelerated calendar under CAROA 57 (b) (1).

The central question presented in this case is whether or not the trial court was required under the law and these facts to make inquiries into the prospective custodial relationships for the child. We conclude that such inquiries were required, and that a new hearing on custody should be granted.

■ The provisions of the marital dissolution act evidence a clear legislative purpose to substantially diminish the adversary nature of the traditional custody proceedings which had preceded enactment of the new law. RCW 26.09.110[3] allows for the appointment of an attorney for

---

[3]RCW 26.09.110 provides:

"The court may appoint an attorney to represent the interests of a minor or dependent child with respect to his custody, support, and visitation. The court shall enter an order for costs, fees, and disburse-

children whose parents are engaged in litigation over custodial rights. This provision, while discretionary rather than mandatory, recognizes that the parental adversaries do not always bring to light those factors most important in the proper resolution of the dispute, *i.e.*, the best interests of the children.

Furthermore, RCW 26.09.220 and RCW 26.09.250 specifically grant the trial court powers similar to those available in child dependency proceedings to investigate questions of custodial arrangements and, if necessary, to order continuing supervision over custody, to insure the welfare of the children.

Finally, RCW 26.09.190, in explicit and mandatory language, requires the court to consider "all relevant factors" including the relationship of the children with the parents and "any other person who may significantly affect the child's best interests."

Considered in their entirety, these provisions persuade us the legislative purpose is to avoid custody determinations based solely upon the evidence—often partisan—produced by the adversaries, and to avoid a result dictated by the skill of the advocates or the strategies employed by counsel.

We do not mean to say that under all circumstances the court is required to utilize the provisions of RCW 26.09.110, RCW 26.09.220, and RCW 26.09.250 to supplement the evidence or supervise the custodial arrangements. These three statutes are written so as to allow the exercise of discretion. However, the provisions are clear in their grant of discretionary power—that the court should not, where deficiencies in the proof are present, decide the case in the traditional manner on the evidence adduced by the litigants. Were this not true, RCW 26.09.190 would not contain the list of relevant factors which the trial court *shall* consider in making the determination.

What then should trigger the exercise of discretion to

ments in favor of the child's attorney. The order shall be made against either or both parents, except that, if both parties are indigent, the costs, fees, and disbursements shall be borne by the county."

utilize the tools provided in RCW 26.09.110, RCW 26.09.220 or RCW 26.09.250? Obviously, we cannot here discuss all of the possible circumstances under which these provisions should be utilized. Quite clearly, however, where a serious custody dispute is presented, and where the parties have omitted presenting any evidence on one or more relevant factors specified in RCW 26.09.190, a case is presented where the trial court should act affirmatively to cure the deficiencies in the evidence.

The case at bench represents such a case. By the time of trial, the child had lived for approximately 8 months with respondent. For a portion of that time at least, a woman not married to him had shared the custodial arrangements, and defendant expressed his intention to marry her. Yet no testimony was presented as to the effect of this arrangement on the child or his relationship to his prospective stepmother. Moreover, we are unable to tell from the record to what extent her occupation as an airline stewardess would take her away from home, what arrangements for child care would be made during the absence of both parents from the home, and how often such arrangements would be necessary.

In fact, there is little testimony concerning the relationship of the child to either parent. Neither parent furnished the trial court with any plan for care of the child during the times when their various career responsibilities would make personal care impossible.

In this regard, we note that respondent's career subjects him to frequent transfers and frequent flights away from home. These transfers might also tend to deprive the child of any reasonable visitation rights with petitioner.

On the other hand, petitioner's legal education[4] and future law career would pose child care problems for her. Yet neither party informed the court how these problems would be met, so as to serve the welfare of their child.

The tools provided the trial courts by these statutes will,

---

[4]Petitioner testified that she would attend law school half time, by special permission of the school.

we think, if liberally used, result in an objective, rather than subjective evaluation of the issue.

We hold, therefore, that where custody is in serious dispute, and where from the surface at least, both parties appear to be fit parents, and where the parties fail in their proof to adequately develop the relevant factors set forth in RCW 26.09.190, the court should either appoint an attorney for the child or otherwise order an investigation of those relevant factors, to the end that an objective decision may be made to serve the best interests of the child.

The custody provisions of the decree are reversed and the case is remanded for a new hearing on custody.

JOHNSON and RUMMEL, JJ. Pro Tem., concur.

Petition for rehearing denied August 19, 1975.