[No. 15972–1–I.   Division One.   August 12, 1985.]

KYLE W. CHAPMAN, ET AL, *Appellants,* v. KENNERLY
K. PERERA, ET AL, *Respondents.*

*Jill D. Miller* and *Leonard Kerr,* for appellants.

*John D. Blankinship,* for respondent Kennerly Perera.

*Michael W. Bugni,* for respondent Lian Perera.

*Carlos Y. Velategui,* as guardian ad litem.

SWANSON, J.—This case involves the custody of a 2–year–old male child, Roshan Perera, who was born on June 14, 1983, to Lian R. and Kennerly K. Perera. After Kennerly Perera filed a dissolution action against her husband, the Pereras agreed upon the dissolution terms, including child custody. Before the final decree was entered, however, Kyle W. and Adelaide W. Chapman, the maternal grandparents, intervened, petitioned for Roshan's custody, and were granted temporary custody.

The dissolution decree awarded joint legal child custody to both parents, physical custody to the father, and attor-

ney fees of $5,437.50 and $13,115.63 to Kennerly and Lian Perera, respectively. The Chapmans' motions for a stay in the judgment and for a continuance as well as for a new trial were denied. Upon the father's motion, a post–decree restraining order was issued restricting the Chapmans from invading the father's privacy and disturbing his peace.

The Chapmans now appeal the decree's child custody provision, alleging numerous trial court errors. Both parents[1] cross–appeal the denial of the full amount of their trial attorney fees and seek appellate attorney fees. We affirm the judgment below and award appellate attorney fees to the parents.

The key issues on appeal are (1) whether the trial court abused its discretion in awarding joint legal child custody to the natural parents and physical custody to the father, as both parents desired, (2) whether the trial court abused its discretion in its attorney fee award, and (3) whether the parents are entitled to appellate attorney fees.

## CUSTODY

██ ██ The first issue is whether the trial court abused its discretion in its custody award. The trial court's custody award will not be disturbed on appeal absent a manifest abuse of discretion. *In re Marriage of Cabalquinto*, 100 Wn.2d 325, 327, 669 P.2d 886 (1983). Further, parental rights are constitutionally protected, *In re Luscier*, 84 Wn.2d 135, 136–37, 524 P.2d 906 (1974), and a father has the fundamental right to custody of his children, *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), *cited in In re Luscier, supra* at 137. In the absence of a finding that the parents are unfit or that the child's best interests demand otherwise, custody should be awarded to one of the parents. *In re Marriage of Croley*, 91 Wn.2d 288, 294, 588 P.2d 738 (1978); *see Award of Custody of Child Where Contest Is Between Child's Parents and Grandparents*, 31 A.L.R.3d 1187, 1199 (1970).

---

[1]The arguments of cross appellants and respondents Lian R. and Kennerly Perera have been consolidated.

Under RCW 26.09.190, a custody determination between the natural parents must be made in the child's best interests. Between a parent and a nonparent, however, a more stringent test is applied: custody may be awarded to a nonparent as against a natural parent only where "placing the child with an otherwise fit parent would be detrimental to the child . . ." *In re Marriage of Allen,* 28 Wn. App. 637, 649, 626 P.2d 16 (1981).

Here the trial court found that both parents were fit to have Roshan's legal custody and that awarding custody to the father would not be detrimental to the child. The court further found that even under RCW 26.09.190's lower best–interests–of–the–child standard, joint legal custody should be awarded to the parents with physical custody in the father. This finding implicitly acknowledges consideration of RCW 26.09.190's custody determination factors:

(1) The wishes of the child's parent or parents as to his custody and as to visitation privileges;

(2) The wishes of the child as to his custodian and as to visitation privileges;

(3) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community; and

(5) The mental and physical health of all individuals involved.

Claiming that the trial court erred in its custody award, the Chapmans challenge these portions of the following findings of fact:

## VI.

. . . Throughout this time the Petitioner/Wife and the Respondent/Husband continued to be concerned about Roshan and saw him on a frequent basis. . . . Again, at the time of the running of the ninety (90) days, approximately July of 1984, the Respondent/Husband was prepared to take affirmative custody of the child and to have him live with him. He had made arrangements for an adequate apartment in Ballard.

## VII.

. . . Regarding any allegations of violent acts by the Respondent/Husband towards the Petitioner/Wife, the Court finds and concludes from the more persuasive evidence in the record that there is no violence or abuse, physical or emotional, on the part of the Respondent/ Husband towards his Wife.

## VIII.

The Court finds that the most persuasive evidence in the record is that both the Petitioner/Wife and the Respondent/Husband are fit and proper persons to have the care, custody and legal control of their minor child, Roshan Perera . . .

## IX.

The Court finds that the most persuasive evidence in the record is that awarding the child to the Husband will not be a detriment to the child.

## X.

With respect to the best interests standard of RCW 26.09.190, the Court is not persuaded that the best interests of this child would be served by having the child remain with his grandparents. The best interests of the child would be served by awarding joint legal custody to the Petitioner/Wife and Respondent/Husband, with physical custody in the Respondent/Husband. The Court finds that the Petitioner/Wife, Kennerly Perera, and the Respondent/ Husband, Lian Perera, were very credible witnesses and that their testimony with respect to past, present and future care of the child is very credible. Both parents manifest a deep and abiding concern and love for their son, and the Court is persuaded that they will give paramount consideration to the child's best interests. Lian Perera, in particular, presented to the Court a comprehensive and well thought out plan for custody, including his arrangements for day–care, health care, and the emotional/psychological needs of the child. The Respondent/Husband has a stable job and adequate living arrangements for the child. He has shown an appropriate interest in the welfare and development of the child since the child's birth.

. . .

## XIII.

The Court finds that the Husband should not be restricted to residing in the State of Washington. The

Court finds . . . that it would not be detrimental to the best interests of Roshan Perera were his father to relocate in another city.

Findings of fact 6, 7, 8, 9, 10, and 13.

■ The trial court's findings will be undisturbed if supported by substantial evidence. *In re Marriage of Woffinden,* 33 Wn. App. 326, 330, 654 P.2d 1219 (1982). The above findings are supported by such evidence in the record, including the recommendation reports of the family court caseworker and guardian ad litem, which were incorporated into the court's findings in the unchallenged finding of fact 11. The court's findings further support its conclusions of law, including its custody award.

■ The Chapmans claim that the trial court improperly did not consider statutory factors (3), (4), and (5) in its custody determination. Where, as here, the record indicates that substantial evidence was presented on the statutory factors so that they were available for the trial court's consideration and an appellate court's review, specific findings on each factor are not required. *In re Marriage of Croley, supra* at 292. Moreover, here, as in *Croley,* the trial court's oral opinion and factual findings indicate that the statutory factors were weighed in its custody determination; further, the court stated that the custody award was made in the child's best interests.

The Chapmans contend, however, that the trial court erred in failing to consider pursuant to RCW 26.09.190(3) either at or after trial the child's relation with his paternal aunt who, they claim, "may significantly affect" Roshan's best interests. This contention has no merit. The record indicates that the father's sister arrived from Singapore, where she lives, at the time of trial because the trial was delayed for 2 weeks; further, her visit is temporary. Moreover, during her stay the aunt has cared for the child during the day while the father worked so that he could save on day care costs. When his sister leaves, the father will employ day care services as revealed at trial. Thus if the court's omission was error, the error was harmless.

As for the child's adjustment to his home, the family court report that was incorporated by reference in unchallenged finding of fact 11 states that during the home visit with the father, the father was observed to be loving and physically affectionate, holding the child when he wanted to be held and following him when he went out of sight. Further, the guardian ad litem's report, similarly incorporated by reference in finding of fact 11, states that the mother thought that the father, who is very family oriented, could provide the child with a loving home.

Further, the Chapmans' contention that the court did not consider the parties' mental and physical health is without merit. The trial court heard testimony from a clinical psychologist with a Ph.D. regarding the father's mental and emotional stability and from a child psychiatrist regarding the grandparents. Moreover, while the mother was not evaluated by an expert, she was interviewed personally by the guardian ad litem.

Similarly without merit is the Chapmans' contention that the court–ordered psychiatric evaluations of all the parties could not be waived without a further court order. The record indicates that the parties agreed to forgo the evaluations because of scheduling problems. Moreover, the father's lawyer was to prepare and the Chapmans' lawyer was to have entered an order to that effect, but the Chapmans' attorney never did so. Further, the guardian ad litem testified that once he had interviewed all the parties, his opinion was that no independent psychiatric evaluations were necessary. The trial judge, in ruling that the Chapmans had waived any entitlement to all parties' independent psychiatric evaluations, stated that he would rely upon the testimony of the guardian ad litem, who had been appointed to represent the child's interests.

Also lacking merit is the Chapmans' contention that denial of their motion for waiver of the mother's patient–physician privilege was error. The mother's psychiatrist was never subpoenaed, and the Chapmans did not make a threshold showing of child neglect or abuse, *see* RCW 5.60-

.060(4), for the court to even consider waiving the privilege. Further, no attempt was made during trial to compel the mother's psychiatric evaluation.

Here the trial court's oral opinion and factual findings indicate that it did consider the relevant statutory custody determination factors, including the parents' wishes, which were that they both be given joint legal custody and that the father be given physical custody. The trial court did not abuse its discretion in its custody award.

Moreover, the trial court did not err in denying the Chapmans' motions for a stay of judgment and continuance and for a new trial because of their alleged inability to obtain meaningful pretrial discovery. The record indicates that the father complied with the Chapmans' requests for pretrial discovery and with the trial subpoena for certain financial documents and a letter and that the mother produced the subpoenaed documents that she possessed. Moreover, the trial court found that by not requesting that the trial be delayed until additional discovery was completed, the parties had waived their right to further pretrial discovery.

Lacking in merit is the Chapmans' contention at oral argument that the trial court erred in not appointing an attorney for the child pursuant to RCW 26.09.110 under *In re Marriage of Waggener,* 13 Wn. App. 911, 538 P.2d 845 (1975). *Waggener* is distinguishable in that unlike in *Waggener,* at 916–17, in which little evidence was adduced concerning the child's relation with either parent as well as the prospective stepmother and neither parent presented a plan for child care when career responsibilities precluded personal care, here thorough investigations into the child's relation with his father were made by the court appointed family court caseworker and experienced guardian ad litem, who was also an attorney, and the father submitted a comprehensive child care plan that included day care during his working hours.

ATTORNEY FEES

The Chapmans next contend that the attorney fee awards were an abuse of discretion and assign error to these portions of the following findings of fact:

XV.

The Court finds it appropriate to award attorneys' fees to both the Petitioner/Wife and the Respondent/Husband. . . .

XVI.

This award of attorneys' fees is based upon the financial circumstances of the parties and the fact that the intervenors required that the Petitioner and Respondent extensively litigate custody. The Court finds that the Petitioner/Wife and the Respondent/Husband, who earn approximately $1,100 (net) per month each, have a significant financial need regarding the attorneys' fees in this case as well as an inability to pay. The Respondent/Husband has had to borrow money in order to pay some of his attorney fees and a very substantial portion of these attorneys' fees remain unpaid. Dr. Chapman, on the other hand, who is a physician, had gross business receipts of $138,344 in 1983 and $135,245 in 1982. Dr. Chapman's net business income for 1983 was in excess of $80,000 and in 1982 it was in excess of $77,000. In 1983, Dr. and Mrs. Chapman had additional interest income, wages and dividends of $9,653. In 1982, the Chapmans' additional income for wages, interest and dividends was $8,362. . . . In 1982 Dr. and Mrs. Chapman contributed $21,959 to charity, and in 1983 they contributed $26,519 to charity. These facts demonstrate an ability to pay attorneys' fees on the part of the Intervenors herein, and the Court cites RCW 26.09.140 as its statutory basis for this award of attorneys' fees, which statute was pleaded by Petitioner and Respondent.

XVII.

The Court finds a second and independent basis for awarding attorneys' fees in that the Respondent/Intervenors were responsible for this matter having to be litigated and that the dissolution would otherwise have been resolved at the very outset of the proceedings by agreement between husband and wife. By intervening in this case and by further insisting that the matter proceed through litigation, despite reports by the Family Court

and the Guardian Ad Litem which favored the Respondent/Husband, the Intervenors/Respondents are responsible for attorneys' fees incurred as a result of this litigation under the theory of *In re Marriage of Dalthorp*, 23 Wn. App. 904, 598 P.2d 788 (1979), which theory has been pleaded by Petitioner and Respondent.

XVIII.

. . . The Court, having considered the amount of attorneys' fees at a hearing subsequent to the custody trial, hereby finds that $5,437.50 represents a reasonable award of attorneys' fees in favor of the Petitioner/Wife as against the Respondents/Intervenors and $13,115.63 represents a reasonable award of attorneys' fees in favor of the Respondent/Father as against the Respondents/Intervenors.

Findings of fact 15, 16, 17, 18. These findings are supported by substantial evidence in the record.

■ RCW 26.09.140 provides in part:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs.

Here the trial court found, based upon the evidence presented, that the parents had a significant financial need and an inability to pay the attorney fees incurred in defending against the intervenors' petition for custody while the intervenors Chapman had a substantial income and the ability to pay attorney fees. An attorney fee award under RCW 26.09.140 will not be reversed on appeal unless it is untenable or manifestly unreasonable. *In re Marriage of Fernau*, 39 Wn. App. 695, 708, 694 P.2d 1092 (1984). The trial court did not abuse its discretion here.

The trial court's second basis for its attorney fee award was what it found to be the Chapmans' intransigence under *In re Marriage of Dalthorp,* 23 Wn. App. 904, 912–13, 598 P.2d 788 (1979). *See Eide v. Eide,* 1 Wn. App. 440, 445, 462 P.2d 562 (1969). The unchallenged portion of finding of fact 18 states that the reasonable attorney fees incurred in the litigation by the mother and father were $6,790 and $15,623.50, respectively. However, the unchallenged portion continues, but for the Chapmans' intervention, the mother's and father's legal fees and costs for an uncontested divorce would have been $718.59 and $250, respectively.

The family court commissioner's order granting the Chapmans' motion to intervene in the action stated that the reasons for granting temporary child custody to the Chapmans were that (1) the parents, by allowing the Chapmans to assume full–time care of Roshan at the commencement of the divorce proceedings, in effect abdicated certain parental rights[2] and (2) the parents did not articulate a satisfactory child care plan. The court commissioner further ordered a guardian ad litem's appointment and a family court investigation. Both the guardian ad litem and family court caseworker recommended that the father be awarded physical custody of Roshan. The parents' wishes, an RCW 26.09.190 custody determination factor, were that the father be given physical custody of Roshan. Further, the evidence supports the trial court's finding of fact 10 that the father had presented to the court a comprehensive, well thought out custody plan including arrangements for day care, health care, and the child's emotional needs.

Dr. Chapman conceded that he had told Roshan's father that he would "spend what [he] could to obtain custody of

---

[2]Because both parents worked, day care for Roshan had been provided first by the paternal grandmother from Sri Lanka who visited the Pereras for about 7 months, and then by the Chapmans. At the time that the Chapmans intervened in the dissolution action, Roshan was living with them temporarily until his parents established separate households and worked out his permanent care arrangements. During this time both parents saw Roshan frequently. At the end of the 90–day waiting period, the father was prepared to have Roshan live with him.

Roshan." The trial court in its oral ruling on attorney fees stated,

From all the evidence presented to the Court from an objective standpoint, it appears to the Court that there was some intransigence in the Chapmans' actions. . . .

. . .

The action was instituted and maintained by the Chapmans [in] their sincere, subjective belief [that their actions were necessary in their grandchild's best interests]; but from an objective standpoint, this action should have ceased sometime ago.

The record evidence supports the court's finding of fact 17 regarding an attorney fee award based upon the Chapmans' intransigence as well as finding of fact 18 regarding the amount of fee awards.

The parents, however, cross–appeal the award of only 75, not 100, percent of their reasonable attorney fees, contending that the Chapmans had made no claim for reimbursement for alleged charitable acts that were the basis for the 25 percent reduction in the attorney fee awards. The appellants' reply brief asserts a claim for child support based upon Washington law requiring parental child support, citing RCW 26.16.205 and *In re Feldman,* 94 Wn.2d 244, 615 P.2d 1290 (1980). The attorney fee award is discretionary, and we do not find that the reduction was an abuse of discretion.

The next issue is whether the parents are entitled to attorney fees on appeal. The parents contend that they are entitled to appellate attorney fees based upon the Chapmans' allegedly frivolous appeal, their continued intransigence, and the parents' financial need in contrast to the Chapmans' ability to pay. We award the parents their appellate attorney fees on all three grounds.

First, the disparity continues between the parents' financial need and inability to pay attorney fees in contrast to the Chapmans' substantial financial means and ability to pay. *See* RCW 26.09.140. Next, we find this appeal to be frivolous. An appeal is frivolous if no debatable issues are presented upon which reasonable minds might differ, and it

is so devoid of merit that no reasonable possibility of reversal exists. *Gall Landau Young Constr. Co. v. Hurlen Constr. Co.,* 39 Wn. App. 420, 432, 693 P.2d 207, *review denied,* 103 Wn.2d 1026 (1985); *Streater v. White,* 26 Wn. App. 430, 435, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980). Here even if all doubts are resolved in the appellants' favor, *Streater,* no debatable issues are presented upon which reasonable minds might differ, and no reasonable possibility of reversal exists.

A third basis for awarding appellate attorney fees is the Chapmans' continued intransigence. Before the dissolution decree with the custody provision was entered, the Chapmans had filed a motion for a stay of entry of judgment and for a continuance, which was denied. Then the Chapmans filed a new trial motion, which was denied, and an initial and two amended notices of appeal. The Chapmans then filed a motion for accelerated review, which was granted, and for a stay of the transition in the child's custody from the appellants to the father, which was denied. The Chapmans' motion to modify the commissioner's ruling was denied. In addition, the appeal has little merit. The Chapmans have taken actions that have made litigation more difficult such that their continued intransigence warrants an appellate attorney fee award to the parents. *Dalthorp.*

We have examined the Chapmans' other contentions and find them to be without merit. The trial court's judgment is affirmed and appellate attorney fees and costs of $10,500 are awarded to Lian Perera and $3,500 to Kennerly Perera, with such fees and costs payable directly to the attorneys of record pursuant to RCW 26.09.140.

RINGOLD and GROSSE, JJ., concur.

Review denied by Supreme Court October 18, 1985.