[Nos. 14746-3-I; 14984-9-I.   Division One.   August 19, 1985.]

*In the Matter of the Marriage of* SUE NORDBY, *Respondent, and* ARTHUR NORDBY, *Appellant.*

532

*Edwards & Barbieri* and *Malcolm Edwards,* for appellant.

*Sue Nordby,* pro se.

GROSSE, J.—Dr. Arthur Nordby appeals the trial court's decision awarding custody of his 14–year–old daughter Karena to Mrs. Nordby. He makes this appeal on the grounds that the court incorrectly weighed and considered the testimony as to Mrs. Nordby's fitness as a parent. Dr.

Nordby further contends that the court erred in its finding that goodwill existed and in assessing $194,908 against his estate for such goodwill. For the reasons set forth below, we reverse and remand to the trial court.

## CUSTODY

█ The well established rule in child custody matters is that the trial court's decision will not be overturned in the absence of a manifest abuse of discretion. *Thompson v. Thompson*, 56 Wn.2d 244, 352 P.2d 179 (1960). However, in the instant case, the record before the court is replete with evidence that the wife is unfit to care for the child.

Mrs. Nordby had a history of mental illness including a confinement at Fairfax Mental Institution. Mrs. Nordby's testimony throughout the trial was disjointed, rambling, and in many cases unresponsive to both counsel and the court. Several neighbors testified as to the erratic behavior of Mrs. Nordby in her interaction with the children and themselves. An independent psychiatrist hired by both parties, Dr. S. Harvard Kaufman, recommended that the father have custody. His report indicated that Mrs. Nordby did not recognize any problems with the children, that the daughter exhibited anxiety, and that without specified mental help Mrs. Nordby's raising of Karena would be detrimental to Karena. Furthermore, the testimony of the family court social worker also indicated that the husband had the greater potential to nurture the children. Although he had concerns about the father's lack of relationship with the children, he stated that the husband had a clearer picture of the needs of the children and that the mother was unable to control them.

Insofar as Karena is concerned, her testimony in chambers clearly demonstrated the mother's adverse impact on her personality. Like her mother, her testimony was disjointed, rambling, and in many instances unresponsive to the question asked. During this interview in chambers, Karena expressed a strong, if not intransigent, dislike of her father and an express wish to be with her mother.

The court's own findings of fact recognize the existence of Mrs. Nordby's mental illness.

4.3 *Mother's Mental Illness.*

. . .

    d. Everyone except the mother accepts and understands this fact [mental illness] and the mother's mental condition needs to be dealt with.

    e. Dr. S. Harvard Kaufman, the Court appointed psychiatrist who prepared the custody evaluation herein, is of the professional opinion or impression that Mrs. Nordby is suffering from a mental illness and has been for some time.

    f. The Court has observed the mother in the courtroom during these proceedings and concurs with Dr. Kaufman's professional opinion.

In discussing the mother's fitness as a parent, the court made the additional finding that a person with mental illness is not, for that reason, unfit. The court stated that it thought that there probably would be a remission in this case.

The test for fitness of custody should be the present condition of the mother and not any future or past conduct. *In re Marriage of Woffinden,* 33 Wn. App. 326, 654 P.2d 1219 (1982). *See also Atkinson v. Atkinson,* 38 Wn.2d 769, 231 P.2d 641 (1951). It was therefore error for the trial court to award custody to Mrs. Nordby on its projections that a remission of her illness would occur in the future. We reverse the trial court's award of custody.

We understand the trial court's difficulty in reconciling Karena's strongly stated preference for her mother with the court's finding of mental illness. In these circumstances we believe application of RCW 26.09.110 was mandated. Appointment of a guardian ad litem or attorney for the minor child would have assisted the court in determining the custody issue in accordance with the mandatory requirements of the statute. RCW 26.09.190 provides in pertinent part:

The court shall determine custody in accordance with the best interests of the child. The court shall consider

all relevant factors including:

. . .
(4) The child's adjustment to his home, school, and community; and
(5) The mental and physical health of all individuals involved.

As stated in *In re Marriage of Waggener,* 13 Wn. App. 911, 917, 538 P.2d 845 (1975),

where custody is in serious dispute, and where from the surface at least, both parties appear to be fit parents, and where the parties fail in their proof to adequately develop the relevant factors set forth in RCW 26.09.190, the court should either appoint an attorney for the child or otherwise order an investigation of those relevant factors, to the end that an objective decision may be made to serve the best interests of the child.

The evidence presented at trial and in the affidavits of the neighbors was such that it should have been clear to the trial court that there was a need to appoint an attorney for the child or a guardian ad litem to assist the court in reaching an objective decision on custody. This is particularly true in view of the court's concerns with regard to attempting to order a teenager to reside somewhere that she does not wish.

Because the case is remanded for a new trial with regard to custody, we deem it necessary to address Dr. Nordby's assignment of error to the court's refusal to permit discovery of Mrs. Nordby's medical records.

██ The physician/patient privilege is established in RCW 5.60.060(4).

A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient, *but this exception shall not apply in any judicial proceeding regarding a child's injuries, neglect or sexual abuse, or the cause thereof.*

(Italics ours.) In proceedings involving the protection of children, courts have been reluctant to keep relevant information from the trier of fact. *See In re Dodge,* 29 Wn. App.

486, 628 P.2d 1343 (1981), indicating that because the failure of a parent to provide emotional nurturing, stability, and permanence is as harmful to a child's well–being as physical abuse; and because such failure (whether resulting in physical or emotional harm) constitutes neglect, the exception in RCW 5.60.060(4) applies to such neglect. In holding that certain psychological records were admissible, the *Dodge* court stated:

> We discern a legislative intent in providing for an exception to the physician–patient privilege to permit the court in proceedings affecting children to have complete information in order to make a decision concerning the best interests of the child. A court cannot determine the best interests of the child without of necessity considering whether the parent has neglected the child.

*Dodge,* at 492–93. Although *Dodge* involved a deprivation hearing, the same reasoning applies here, especially where an expert has testified to Mrs. Nordby's inability to provide emotional nurturing, stability, and permanence to Karena. To the extent the trial court on remand determines that Mrs. Nordby's medical records are relevant and necessary to the proceeding, they may be discoverable and admissible to determine the best interests of the child. Of course, in its discretion, the trial court may impose such protective orders with regard to the contents of the records as are necessary. We are not suggesting here that such discovery of medical records is pro forma in child custody cases; but rather, in cases such as this where the circumstances clearly indicate neglect, the discovery and admissibility of prior psychological evaluations may be warranted.

### ADDITIONAL EVIDENCE

Since we have remanded this matter to the trial court for appropriate action, we believe it unnecessary to hear additional evidence on custody as requested by appellant. Accordingly, appellant's motion to take additional evidence on review pursuant to RAP 9.11(a) is denied. We would note, however, that this additional evidence should be considered by the trial court to ensure consideration of the

best interests of the child in light of her present circumstances. *In re Marriage of Little,* 96 Wn.2d 183, 198, 634 P.2d 498 (1981).

## GOODWILL

This is essentially a $2 million estate. There was expert testimony by one tax attorney, one corporate attorney, and two certified public accountants. None of the experts testified as to any goodwill being present in the doctor's business. In fact, the testimony of one of the experts was that no goodwill existed with the doctor because he was an anesthesiologist and, as such, had no contact with patients and received work on a rotational basis. The issue of goodwill was raised by the court.

The factors utilized to determine goodwill are obtained through expert testimony and a consideration of the practitioner's age, health, past earning power, reputation in the community, and professional success. *In re Marriage of Fleege,* 91 Wn.2d 324, 588 P.2d 1136 (1979). In this matter, there is no evidence of the existence of goodwill. That the initial inquiry must be whether goodwill even exists was clearly set forth in *In re Marriage of Hall,* 103 Wn.2d 236, 692 P.2d 175 (1984). Here, in response to the court's questioning, the expert testified that a determination had been made that no goodwill existed.

█ Since there is no evidence of the existence of goodwill or any analyses of the factors necessary to valuate goodwill, we reverse and direct that the court reduce the award to Mrs. Nordby. Since it appears from the record that a note in favor of Mrs. Nordby was executed to obtain the equitable division of the property, we deem it appropriate that said note and the corresponding monthly payments be reduced by the amount of the goodwill awarded.

Accordingly, we reverse the trial court's decision as to the award of custody and remand for further proceedings in accord with the directive of this opinion. The note awarded to Mrs. Nordby as her share of community property is reduced by $97,454, with a pro rata reduction of the

538

monthly payments on said note.

SCHOLFIELD, A.C.J., and WEBSTER, J., concur.