170 P.3d 65 (2007)
In re the Marriage of Tracy A. MAGNUSON, Respondent,
v.
Robert S. MAGNUSON, Appellant.
No. 25861-1-III.
Court of Appeals of Washington, Division 3.
October 23, 2007.
*66 Carl Edward Hueber, Nancy Dykes Isserlis, Winston & Cashatt PS, Jason Russell Nelson, Attorney at Law, Spokane, WA, for Appellant.
Allen Morris Gauper, Salina Sanger and Gauper, Martin Louis Salina, Attorney at Law, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 In this parenting plan dispute, Robert S. Magnuson contends the trial court erred by improperly considering transgender status when it granted primary residential placement of the parties' children to Dr. Tracy A. Magnuson. But the court properly focused on the children's needs in making the residential placement decision, not transgender status, conforming to principles established in sexual preference cases. We agree with this extension of principle. Accordingly, we affirm.

FACTS
¶ 2 In 1985, "Robbie"[1] Magnuson and Tracy A. Magnuson (now Berg) were married. They had two children, Brian (born October 4, 1991) and Meridith (born December 29, 1998). Tracy is a surgeon and Robbie is an attorney. Robbie eventually "announced that [s]he needed to, and would be transitioning from male to female." Clerk's Papers (CP) at 534; (Findings of Fact (FF) 2.21 T). She took a leave of absence from work and ultimately resigned. Robbie and Tracy separated in October 2004, and Tracy filed to dissolve their marriage.
¶ 3 After an eight-day trial, the court entered numerous findings, including: "Both parents are good and loving parents. . . . The children's relationship with each parent is approximately equal. Each has performed equal but very different roles with the children. . . . Historically, the parties were a dual professional family, relying on the assistance of nannies[,] and [i]t is somewhat disingenuous for either parent to claim the historical role of primary parent in this case." CP at 533-34.
¶ 4 The court found both parents acted in ways adversely affecting the children's stability. For example, Tracy denigrated Robbie in front of the children; Robbie's conduct had an "unimaginable impact on Meridith" when she showed up at Meridith's school, pushed Meridith's maternal grandmother out of the way, and "grabbed Meridith, such that observers actually thought a kidnapping was going on." CP at 533; FF 2.21 P. Further, "[Robbie] has indicated she will be undergoing sexual reassignment surgery sometime in the very near future. . . . [Robbie's] surgery may be everything [she] has hoped for, or it may be disastrous. No one knows what is ahead[,] and [t]he impact of gender reassignment surgery on the children is unknown." CP at 534.
¶ 5 The court found while Robbie left her job, Tracy "maintained her professional career, has provided for the children in the `former' family home, and provides an oasis of stability in all of this ongoing change." CP at 534. A previous shared co-equal residential placement did not work, and "[t]hese children, in particular, need environmental and parental stability." CP at 534. Finally, "[w]hile the margin is somewhat slim in this particular case, [Tracy] is in a more stable and predictable place in her life right now to *67 act as the children's primary care giver." CP at 534. Robbie appealed.

ANALYSIS
¶ 6 The issue is whether the trial court abused its discretion by impermissibly considering Robbie's transgender status in granting residential placement of the parties' two minor children to Tracy. Robbie contends the court erred in rejecting the guardian ad litem's (GAL) recommendation, in finding "[t]he impact of gender reassignment surgery on the children is unknown," in failing to properly address the factors in RCW 26.09.187(3)(a), and in restricting Robbie's parental rights. CP at 534; FF 2.21 X.
¶ 7 We review a trial court's child placement decision for abuse of discretion. In re Marriage of Kovacs, 121 Wash.2d 795, 801, 854 P.2d 629 (1993). Trial courts have broad discretion and are not bound by GAL recommendations. In re Marriage of Swanson, 88 Wash.App. 128, 138, 944 P.2d 6 (1997); Fernando v. Nieswandt, 87 Wash. App. 103, 107, 940 P.2d 1380 (1997). A court abuses its discretion only if its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Fiorito, 112 Wash.App. 657, 663-64, 50 P.3d 298 (2002). We review challenged findings of fact for substantial evidence. In re Marriage of Vander Veen, 62 Wash.App. 861, 865, 815 P.2d 843 (1991). Unchallenged findings of fact are verities on appeal. Id.
¶ 8 Certain factors must be considered when establishing the residential provisions in a permanent parenting plan. RCW 26.09.187(3)(a). These include: the parent/child relationship, the parents' responsibilities in performing parenting functions, parent agreements, "[e]ach parent's past and potential for future performance of parenting functions," the child's "emotional needs and developmental level," the child's relationships and activities, including schooling, the parent's wishes, the wishes of a mature child, and the parents' employment schedules. RCW 26.09.187(3)(a)(iii)(iv).
¶ 9 First, the trial court carefully considered each child's relationship with each parent before entering FF 2.21 X. The court did not interview the children, but relied upon specific evidence given by the parties and the GAL when finding the impact of Robbie's surgery on the children was unknown. The court acted within its fact-finding discretion when drawing inferences from the given evidence of the children's present uncomfortable and nervous behavior to make the future impact finding. While Robbie points to evidence of the children's adjustment, we are in no position to find facts, reweigh the evidence, or decide witness credibility.
¶ 10 Second, the court was not bound by the GAL's recommendation. Swanson, 88 Wash.App. at 138, 944 P.2d 6; Fernando, 87 Wash.App. at 107, 940 P.2d 1380. The court's oral ruling and its extensive findings of fact show the factors in RCW 26.09.187(3)(a) that were considered; the court is not required to enter written findings on each factor. The record does not support Robbie's assertion that by rejecting the GAL's recommendation, the court impermissibly based its placement decision on transgender status.
¶ 11 Indeed, the court found Robbie was "undergoing an authentic gender transformation," and "has a right to be happy in her chosen life ahead." CP at 534. And, Robbie received substantial residential time with the children without limitation or restriction. See In re Marriage of Cabalquinto, 100 Wash.2d 325, 329, 669 P.2d 886 (1983) ("Visitation rights must be determined with reference to the needs of the child rather than the sexual preferences of the parent."). The Cabalquinto court's reasoning in a sexual preference visitation context is equally applicable in this transgender residential placement context.
¶ 12 In sum, the need of each child, not Robbie's transgender status, was the court's focus in determining residential placement. The court focused on the children's need for "environmental and parental stability" in granting the majority of residential time to Tracy, a permissible statutory factor addressing the children's emotional needs. RCW 26.09.187(3)(a); CP at 534. The trial court did not err in entering the final parenting plan. Considering the financial resources of the parties, we, like the trial court, *68 deny Robbie's request for an award of attorney fees, costs, and expenses under RCW 26.09.140.
¶ 13 Affirmed.
I CONCUR: SWEENEY, C.J.
KULIK, J. (dissenting).
¶ 14 I agree with the majority's conclusion that the Supreme Court's reasoning in In re Marriage of Cabalquinto, 100 Wash.2d 325, 669 P.2d 886 (1983) is equally applicable to transgender persons. Cabalquinto held that a trial court cannot restrict a parent's rights based on sexual orientation, and the majority here extends that holding to transgender persons. See id. at 329, 669 P.2d 886. However, the trial court erred by doing exactly what the majority here prohibits  the court awarded primary residential placement to Tracy based on Robbie's transgender status. This is a manifest abuse of discretion and, therefore, I respectfully dissent.
¶ 15 As the majority states, we review challenged findings of fact for substantial evidence. In re Marriage of Vander Veen, 62 Wash.App. 861, 865, 815 P.2d 843 (1991). And we do not engage in fact finding, or determine witness credibility. However, an abuse of discretion is found if the trial court applies the wrong legal standard or bases its ruling on an erroneous view of the law. State v. Lord, 161 Wash.2d 276, 284, 165 P.3d 1251 (2007) (citing Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006)).
¶ 16 The trial court's Findings of Fact (FF) 2.21 X provides: "The impact of gender reassignment surgery on the children is unknown." Clerk's Papers (CP) at 534. But the trial court's other findings refute the assertion that substantial evidence supports FF 2.21 X. Contrary to the unrebutted expert opinion of Dr. Walter Bochting, the court found that the impact of the gender reassignment surgery on the children was unknown. Dr. Bochting is a national expert in transgender parenting. He presented uncontradicted testimony that transgender status does not ultimately have an impact on the parent's ability to parent.
¶ 17 The court found that the children had approximately equal relationships with each parent. Significantly, the court made no finding that Robbie's transgender status endangered the physical, mental, or emotional health of the children. And, the trial court found that Robbie was the more nurturing parent. CP 533; FF 2.21 N.
¶ 18 The guardian ad litem (GAL) conducted an exhaustive investigation. He interviewed 23 lay witnesses and 15 professional and expert witnesses, and prepared a 214-page report. The court found that the GAL had done a thorough job and had performed his role in an exemplary way. CP 532; FF 2.21 I.
¶ 19 The GAL testified that Robbie was the primary parent based on sabbaticals and involvement with the children on a day-to-day basis. The GAL concluded that Robbie was the more nurturing and engaged parent, and he recommended that the court designate Robbie as the primary residential parent. The GAL also concluded that Tracy had always been the secondary parent. Another expert, Dr. Paul Wert, the court-appointed psychologist, stated that psychologically and emotionally, Robbie was capable of continuing to extensively parent.
¶ 20 The trial court also erroneously based its decision to place the children with Tracy on a misreading of RCW 26.09.187(3)(a)(i). Under this statute, the greatest weight shall be given to the "relative strength, nature, and stability of the child's relationship with each parent." RCW 26.09.187(3)(a)(i). Here, the trial court found a lack of stability based on Robbie's transgender status. "The respondent has indicated she will be undergoing sexual reassignment surgery sometime in the very near future. Said surgery may be everything respondent has hoped for, or it may be disastrous. No one knows what is ahead." CP at 534; FF 2.21 U.
¶ 21 However, the statute requires a review of the stability of the child's relationship with the parent  not a review of whether the parent may have a surgery that impacts the parent. The trial court's conclusion that Robbie's life was not stable because of her planned surgery was directly and impermissibly related to Robbie's transgender status. And again, there was no evidence and no *69 finding that Robbie's transgender status would cause any harm or detriment to the children.
¶ 22 Moreover, the proper test of parental fitness is the present condition of the parent. The court's speculation about the future is not an appropriate basis for awarding custody. See In re Marriage of Nordby, 41 Wash. App. 531, 534, 705 P.2d 277 (1985); In re Custody of Stell, 56 Wash.App. 356; 368, 783 P.2d 615 (1989).
¶ 23 Finally, the trial court itself recognized that Robbie's transgender status caused no harm to the children when it placed no restrictions on Robbie's visitation with the children. The court agreed that the children's relationships with each parent were approximately equal. Apparently, the only difference between the parents was that Robbie, the primary parent, planned to have gender reassignment surgery.
¶ 24 "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds." In re Parentage of J.H., 112 Wash.App. 486, 492, 49 P.3d 154 (2002). One parent's transgender status is not a tenable ground upon which to decide residential placement.
¶ 25 Accordingly, I respectfully dissent.
NOTES
[1] Each party is referred to by first name to avoid confusion without disrespect to individual or professional status. Similarly, Robbie is referred to by pronoun in the female gender consistent with the preference shown in Robbie's briefing and to conform to and avoid confusion with the trial court's quoted findings of fact.