[No. 25303-1-III.   Division Three.   April 29, 2008.]

*In the Matter of the Custody of* B.J.B. ET AL.

DANIEL BARRETT, JR., ET AL., *Respondents*, v. DANIEL BARRETT, SR., *Appellant*, CARMELITA BARRETT, *Respondent*.

2

6

*Robert R. Cossey* and *Keely Rae Chapman* (of *Robert R. Cossey & Associates, PS*); and *Mark D. Hodgson*, for appellant.

*Richard T. Cole*, for respondents.

¶1 STEPHENS, J.[*] — Dan Barrett Jr. and Carrie Barrett filed a petition for nonparental custody of BJB and BNB, Dan Jr.'s siblings. Dan Barrett Sr. opposed the petition. The court entered a finding of adequate cause and set the matter for hearing. After a hearing, the court granted the petition and limited Dan Sr.'s visitation until specified conditions were met. The court also imposed a child support obligation and attorney fees. Claiming the court erred in all these matters, Dan Sr. appeals. We affirm custody and visitation. We reverse the court's fee award and remand for a redetermination of child support, federal tax exemptions, and attorney fees.

## FACTS

¶2 Dan Sr. and Carmelita Barrett were married in 1979. They had seven children. Two of their children who are still

---

[*] Justice Debra L. Stephens was a member of the Court of Appeals at the time oral argument was heard on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

minors at this time, BJB and BNB, are the subject of this third-party custody action.

¶3 In 1997, Dan Sr. and Carmelita filed for dissolution of their marriage. Initially, Carmelita was the custodial parent. That action was filed in Pierce County.

¶4 In 2001, Dan Sr. filed a motion to modify the parenting plan. Carmelita was late to the hearing and a default order awarding Dan Sr. custody of the couple's then minor children was entered. BJB and BNB were at the courthouse with Dan Sr. at the time the order was entered. He left the courthouse and Carmelita next saw him at her residence, where he went to take custody of their other three minor children.

¶5 Carmelita had called her home to tell the children what had happened. She and her boyfriend then proceeded to the residence. When her boyfriend approached Dan Sr., there was an altercation and Dan Sr. shot the boyfriend. Dan Sr. was arrested. This was the last time he had any contact with BJB and BNB.

¶6 After the shooting, the children lived with a family friend and then their mother. In May 2003, they moved in with their brother Dan Jr. and his wife, Carrie.

¶7 Dan Sr. was eventually acquitted of any crime arising from the shooting. However, a permanent restraining order was entered prohibiting him from contact with Carmelita or any of their minor children.

¶8 In September 2005, Dan Jr. and Carrie filed a petition for third-party, nonparental custody. The petition alleged the children were not in the physical custody of either parent and would be detrimentally affected if they were to return to the custody of their parents. Carmelita did not oppose the petition, but Dan Sr. did. Dan Jr. and Carrie also requested that Dan Sr.'s visitation be limited.

¶9 The court found there was adequate cause supporting the petition and appointed a guardian ad litem (GAL). This matter proceeded to trial in April 2006. Dan Sr. represented himself. After hearing testimony from several witnesses,

the court entered findings of fact and conclusions of law awarding Dan Jr. and Carrie nonparental custody. The court also limited Dan Sr.'s visitation: he was not to have any contact with BJB and BNB until he completed a domestic violence perpetrator treatment program and sought the advice of counselors. The court also entered a child support order and awarded Dan Jr. and Carrie $2,000 in attorney fees. Dan Sr. appeals.

## ANALYSIS

¶10 RCW 26.10.030(1) permits a nonparent to petition for custody of a child. *In re Custody of Shields*, 157 Wn.2d 126, 137, 136 P.3d 117 (2006). However, a nonparent is permitted to make such a petition in only two situations: (1) if the child is not in the physical custody of one of its parents or (2) if neither parent is a suitable custodian. RCW 26.10.030(1). RCW 26.10.032(1) sets forth the procedure for a nonparent to seek custody. That statute provides:

> A party seeking a custody order shall submit, along with his or her motion, an affidavit declaring that the child is not in the physical custody of one of its parents or that neither parent is a suitable custodian and setting forth facts supporting the requested order. The party seeking custody shall give notice, along with a copy of the affidavit, to other parties to the proceedings, who may file opposing affidavits.

*Id*. The court must deny the motion unless it finds adequate cause exists from the affidavits submitted to require a hearing. RCW 26.10.032(2). If the court finds adequate cause, then the motion is set as an order to show cause why the requested order should not be granted. *Id*.

¶11 Dan Sr. claims the court erred by determining adequate cause existed. First he asserts there was no basis for the ruling finding adequate cause. He relies on cases interpreting RCW 26.09.260 to argue the affidavits lacked the requisite support. However, RCW 26.09.260 relates to modifications of parenting plans between parents. The courts have stated in such cases that there is a presumption

favoring custodial continuity and against modification. *In re Marriage of Roorda*, 25 Wn. App. 849, 851, 611 P.2d 794 (1980), *overruled on other grounds by In re Parentage of Jannot*, 149 Wn.2d 123, 125-27, 65 P.3d 664 (2003). The purpose of these statutes is to impose a heavy burden on the noncustodial parent so that he or she will not file this type of motion to harass the custodial parent. *Id.* Adequate cause in these cases thus requires something more than prima facie allegations. *Id.* at 852.

¶12 Adequate cause here is governed by RCW 26.10.032. This statute does not contain the same requirements or test that the parenting plan modification statutes require. We rely on the tools of statutory construction to determine what RCW 26.10.032 requires.

¶13 The purpose of statutory construction is to discern and give effect to legislative intent. *In re Custody of Smith*, 137 Wn.2d 1, 8, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Intent is derived primarily from the language itself. *Id.* We presume the legislature means what it says. *Id.* Adequate cause under RCW 26.10.032 exists if the affidavits supporting the motion show that the child is not in the custody of either parent or that one or both parents is not a suitable custodian. The use of the term "or" suggests the phrases separated by the "or" are alternatives. *In re Marriage of Caven*, 136 Wn.2d 800, 807, 966 P.2d 1247 (1998). The term "or" is a coordinating particle which signifies an alternative. *Id.* Thus, the court can enter a finding of adequate cause if the affidavits establish either alternative.

¶14 The petition indicated that the children were not in the physical custody of either parent. It also alleged placement with Dan Sr. would be detrimental to the children. Dan Sr.'s response to the petition admitted the children were not in his custody. However, he denied he was detrimental to their growth and development. The fact that the parties agreed the children were not in the custody of either parent gave rise to an undisputed basis to find adequate cause under the statute.

¶15 Dan Sr. argues that if adequate cause is based upon the fact the children were not in his physical custody, this prevents him from asserting his fitness or suitableness as a parent at the full hearing. This argument has no merit. Under RCW 26.10.032(2), once adequate cause has been established, a show cause hearing is held to determine if the motion should be granted. It is then that the nonparent must show that the parent is unfit, or that placement with an otherwise fit parent would detrimentally affect the child's growth and development. *See Shields*, 157 Wn.2d at 142-43. Once adequate cause is established, then the court must use this heightened standard to determine if awarding custody to a nonparent is proper.

¶16 The court properly determined there was adequate cause to proceed to the show cause hearing. There was no error.

¶17 RCW 26.10.030(1) permits a nonparent to file a petition for custody. The court may grant such a petition. This court reviews custody decisions for an abuse of discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

¶18 A custody dispute between a parent and a nonparent requires this court "to apply a heightened legal standard; more than the 'best interests of the child' standard is required." *Shields*, 157 Wn.2d at 140. A parent's rights may be outweighed in two situations: (1) if the parent is unfit or (2) "when actual detriment to the child's growth and development would result from placement with an otherwise fit parent." *Id.* at 142-43.

¶19 Here, the court set forth several facts to support its findings that BJB's and BNB's growth and development would be detrimentally affected by placement with Dan Sr. Among other facts, the court noted the father's significant history of physical and emotional abuse against his children. It found Dan Sr. dragged BJB to her room by her hair when she was a small child because she had not vacuumed properly. The father also controlled these two children by fear.

¶20 These facts support the finding that it would be detrimental to the growth and development of BJB and BNB to be placed with their father.

¶21 Dan Sr. does not attack the factual basis for the court's findings; rather he claims that because these events occurred in the past, they cannot form the basis for the present finding of detriment. The test for custody should be the present condition of the parent, he asserts, not any future or past conduct. *In re Marriage of Nordby*, 41 Wn. App. 531, 534, 705 P.2d 277 (1985).

¶22 However, Dan Sr. had had no contact with his children for five years at the time of the hearing. The court noted he appeared emotionless when the children were upset while testifying. The GAL reported the children were still very fearful of their father. BNB reported to the GAL that he does not feel safe with his dad. The GAL noted the children had not had any contact with their dad since 2001. They were currently living in a stable, happy, and nurturing environment. The GAL noted Dan Sr.'s parenting style in general was detrimental to the children.

¶23 Given the facts present in this case, the court did not abuse its discretion in granting custody to Dan Jr. and Carrie. The facts established that returning BJB and BNB to Dan Sr. would have a detrimental effect on their growth and development.

¶24 Dan Sr. also claims the court should not have been permitted to consider any past pattern of abuse because it was not alleged in the petition. This is not so. The petition clearly states placement with Dan Sr. would detrimentally affect the children because of his violent nature.

¶25 He further argues it was error for the court to enter a continuing restraining order when no limitations under RCW 26.10.160(2)(a) were pleaded. This is not so. The petition requested visitation be limited based upon the permanent restraining order entered in Pierce County. Furthermore, the restraining order entered in this case is redundant because the Pierce County restraining order is

still in effect and prohibits Dan Sr. from contacting his children.

¶26 The court properly found placing BJB and BNB with Dan Sr. would be detrimental to their growth and development. The court thus properly granted Dan Jr. and Carrie's petition for nonparental custody.

¶27 Dan Sr. complains the court applied the wrong standard. The best interests of the child standard is the appropriate standard when deciding custody between parents. *Shields*, 157 Wn.2d at 142. It is also the proper standard when determining custody between nonparents. But between a nonparent and a parent, a more stringent balancing test is required. *Id.* This test requires a finding of parental unfitness, or that placement with an otherwise fit parent would be detrimental to the growth and development of the child. *Id.* at 142-43. Here the court referenced the best interests of the children, but the findings and conclusions clearly indicate the court applied the more stringent test required. This is not a basis for reversal.

¶28 Dan Sr. next argues the court erred by not providing a manner by which he could seek visitation. A parent that is not granted custody is entitled to reasonable visitation. RCW 26.10.160(1). However the court may limit visitation if it finds the parent engaged in the following conduct:

> (i) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (ii) physical, sexual, or a pattern of emotional abuse of a child; (iii) a history of acts of domestic violence as defined in RCW 26.50.010(1) or an assault or sexual assault which causes grievous bodily harm or the fear of such harm; or (iv) the parent had been convicted as an adult of a sex offense.

RCW 26.10.160(2)(a). The court limited Dan Sr.'s visits based upon the second and third types of conduct.

¶29 Dan Sr. first argues the court did not make appropriate findings as required to limit his visitation. RCW 26.10.160(2)(m) does require the court to enter findings

setting forth the reasons why visits are limited. The court did so here. The court also set forth what Dan Sr. could do to obtain visitation. The court indicated that visitation could begin after input from counselors and after Dan Sr. completed a domestic violence perpetrator treatment program. The court is permitted to make such requirements as a condition for visitation. *In re Interest of Mahaney*, 146 Wn.2d 878, 887, 51 P.3d 776 (2002). An avenue for visitation exists.

¶30 Dan Sr. further claims the court erred because despite the fact the court imposed conditions in the findings, the nonparent custody decree prohibited him from having any contact with the children. The decree does state he is not to have any contact with the children. The conditions imposed that once satisfied could permit visitation are not contained in the decree.

¶31 The decree indicates it is based upon the findings. We read the documents together and will not engage in artificial parsing of the language. Reading the findings in conjunction with the decree, there is an avenue through which Dan Sr. can obtain visitation.

¶32 Moreover, to the extent there is an actual conflict, the decree can be amended nunc pro tunc so that it reflects what actually was ordered at trial. *See In re Marriage of Hardt*, 39 Wn. App. 493, 498-99, 693 P.2d 1386 (1985).

¶33 On May 1, 2006, the parties appeared to present the findings and conclusions and the nonparent custody decree. At this hearing, Dan Jr. and Carrie also presented a child support worksheet and an order of child support. The documents listed Dan Sr.'s gross income as $3,520 a month. Counsel indicated the child support worksheet was based upon income as verified by Dan Sr.'s exhibits at trial. The mother had income of $800 a month imputed to her because she was voluntarily unemployed.

¶34 At this hearing, Dan Sr. asked for financial documents from the mother. The mother was present at the

hearing and told the court she was currently unemployed. She was placed under oath and questioned by the court. She said she had not worked for two and one-half years and suffered from post traumatic stress disorder (PTSD). Despite this condition, she was willing to have income of $800 a month imputed to her. The court did not order her to provide any documentation. The court further stated there was no information available to give to Dan Sr. The court entered the child support orders based upon these figures. Dan Sr. claims the court erred in the manner in which it imputed income to the mother. He also takes issue with the amount imputed to her.

¶35 In a nonparental custody action, the court makes child support provisions. RCW 26.10.040(1)(a). The determination of child support is based upon the schedule and standards set forth in chapter 26.19 RCW. RCW 26.10.045 (also see Reviser's note to this statute). A child support award is reviewed for abuse of discretion. *In re Marriage of Peterson*, 80 Wn. App. 148, 152-53, 906 P.2d 1009 (1995), *review denied*, 129 Wn.2d 1014 (1996).

¶36 Dan Sr. first claims the court erred in its child support order because it failed to require the mother to provide income verification. "All income and resources of each parent's household shall be disclosed and considered by the court" for the basis of determining each parent's child support obligation. RCW 26.19.071(1). Current pay stubs and tax returns for the previous two years are to be provided to verify income. RCW 26.19.071(2). Income and deductions that do not appear on tax returns or pay stubs shall be proved by "[o]ther sufficient verification." *Id.*

¶37 Dan Sr. takes issue with the manner in which the court imputed income for the mother. The court is required to impute income to a voluntarily underemployed parent. RCW 26.19.071(6); *In re Marriage of Schumacher*, 100 Wn. App. 208, 213, 997 P.2d 399 (2000). Whether a parent is voluntarily underemployed for purposes of the statute is determined based on work history, education, health, age, and other relevant factors. *Peterson*, 80 Wn. App. at 153. "In

the absence of information to the contrary, a parent's imputed income shall be based on the median income of year-round, full-time workers as derived from the United States bureau of census, current populations reports, or such replacement report as published by the bureau of census." RCW 26.19.071(6).

¶38 The court based its imputation of income for the mother solely upon her testimony. There was nothing verifying her income. The record shows the court accepted her testimony that she suffered from PTSD and imputed $800 of monthly income to her without any documentation; however, the court did not follow the statutory mandate for setting child support and imputing income. Remand is therefore appropriate. *In re Marriage of Sievers*, 78 Wn. App. 287, 306, 897 P.2d 388 (1995) (remand appropriate where trial court failed to include child support worksheet as required by statute).

¶39 RCW 26.10.040(1)(b) requires the court to make an allocation of the children for purposes of the federal tax exemption. It did not do so. The court must also consider this issue on remand.

¶40 Finally, Dan Sr. appeals the court's order requiring him to pay $2,000 in attorney fees. RCW 26.10.080 grants the court power to award fees at the trial level based on the financial resources of the parties. *Smith*, 137 Wn.2d at 21; *In re Custody of S.H.B.*, 118 Wn. App. 71, 91-92, 74 P.3d 674 (2003), *aff'd*, 153 Wn.2d 646, 105 P.3d 991 (2005). In deciding whether to award fees and costs, the court must balance the needs of the party requesting fees against the other parties' ability to pay. *Smith*, 137 Wn.2d at 22.

¶41 There is nothing in the record regarding the financial situation of Dan Jr. and Carrie. Thus, the court could not have considered their need in making this award. Consequently, we reverse the court's fee award. On remand, the court retains discretion to award fees if it makes the requisite findings under RCW 26.10.080.

¶42 Both parties have requested fees on appeal. An appellate court may, in its discretion, order a party to

pay for the cost to the other party of maintaining the appeal and attorney fees in addition to statutory costs. *Smith,* 137 Wn.2d at 21 (citing RCW 26.10.080). Again, in deciding whether to award fees and costs, the court must balance the needs of the party requesting fees against the other parties' ability to pay. *Id.* at 22.

¶43 Pursuant to RAP 18.1(c), both parties must file an affidavit of financial need with this court in support of their respective requests for an award of fees and costs on appeal. Based on the affidavits filed, we award fees to Dan Jr. and Carrie Barrett, in an amount to be determined by a commissioner of this court.

## CONCLUSION

¶44 We affirm the trial court's determination of custody and visitation. We reverse the court's fee award and remand for a redetermination of child support, federal tax exemptions, and attorney fees. We award Dan Jr. and Carrie Barrett fees on appeal.

SCHULTHEIS, C.J., and SWEENEY, J., concur.

Reconsideration denied August 7, 2008.

Review denied at 165 Wn.2d 1037 (2009).