# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the marriage of:

JODY WAYNE MAXSON,

Appellant,

v.

REBECCA KRISTINE MAXSON,

Respondent.

No. 83108-9-I

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, C.J. — Jody Maxson challenges a parenting plan that imposes RCW 26.09.191 restrictions, limiting his unsupervised residential time with his minor daughter, A.M. We conclude the trial court did not abuse its discretion in rejecting a proposed parenting plan to which A.M.'s guardian ad litem objected and in ordering restrictions on Jody's time with A.M. based on his history of abuse and domestic violence.

## FACTS

Rebecca[1] and Jody married on September 2, 1989. Thirty years later, on March 3, 2020, Jody filed for divorce. The couple have six children, five of whom

---

[1] To avoid confusion, we refer to the parties by their first names. We intend no disrespect.

Citations and pin cites are based on the Westlaw online version of the cited material.

are now adults and four who lived outside of the home at the time of the divorce. The youngest, A.M., was twelve years old at the time of trial.

After filing for divorce, Jody filed a proposed parenting plan in which he alleged that Rebecca had mental health concerns that affected her ability to parent. He asked the court to limit the amount of time Rebecca had with A.M. and to require Rebecca to undergo mental health treatment. Approximately one month later, on April 7, 2020, Jody filed a second proposed parenting plan. This proposal made no mention of Rebecca's mental health concerns and retracted his request for his proposed limitations.

On April 16, 2020, the court issued a temporary parenting plan, placing A.M. with Jody, and requiring the mother's residential time to be monitored because of concerns about Rebecca's "alleged endorsement of paranoid delusions" made during a 2018 psychological evaluation. The court ordered the mother to complete a mental health evaluation with Dr. Marsha Hedrick. It also appointed a guardian ad litem (GAL) and directed the GAL to investigate "all issues related to making a parenting plan" for A.M., and Rebecca's mental health issues. It ordered the GAL to prepare a report covering these issues and A.M.'s preferences for the parenting plan, and to make recommendations based on this investigation. Elizabeth Garrett accepted the appointment as GAL in late April 2020.

As part of her investigation, Garrett spoke with both parents and all six of their children, as well as other members of the extended family. She reviewed the parents' psychological reports and evaluations and spoke with Dr. Hedrick, who evaluated both parents.

In June 2020, after speaking with A.M. and hearing multiple reports of a history of abuse, Garrett made a referral to Child Protective Services (CPS). Pending the CPS investigation, the parties agreed that A.M. would live with her cousin, Marisa Bass.

Garrett filed an interim report on September 18, 2020. Garrett described Jody as "very controlling and emotionally abusive to [Rebecca] during the marriage." Rebecca reported to Garrett that Jody had kept her isolated during the marriage, controlled all their finances, and demeaned and berated her when she disagreed with him. Rebecca provided numerous anecdotes corroborating these claims. She reported that Jody threw things at her in anger but had never hit her during the marriage. The report also noted that Rebecca was diagnosed with a delusional disorder in 2018.

Garrett further reported that all five of the adult children felt that A.M. should not be placed with Jody. They described their father as controlling and manipulative as well as physically, verbally, and emotionally abusive to them growing up. They similarly reported that Rebecca was physically, verbally, and emotionally abusive. The oldest son, Brendan, reported that "he was beat[en] with a belt repeatedly for small things as well as humiliated and demeaned by both [of] his parents." He included examples of abuse, such as being hit with a 2x4 board, thrown, pushed face-first into a toilet full of excrement, and denied food as a form of punishment. Another son, Joseph, who was living in the home with A.M. and the parents, told the GAL that he "put his life on hold to be there for [A.M.]" so that he could intervene and prevent the parents from abusing her. His allegations of

- 3 -

abuse are similar to those of Brendan. The other three children provided comparable reports to the GAL.

According to the GAL's interim report, A.M. was afraid of being with her father. She reported that she did not feel safe with Jody and told Garrett that Joseph prevented her parents from yelling at or hitting her. A.M. told Garrett that "she does not want to live with either of her parents. She loves her parents but is afraid of them and afraid they will hurt her again."

Jody filed a detailed response to the GAL report and denied each of the allegations. Jody admitted using corporal punishment in the past but insisted that he had not used it against A.M. for approximately six years. He acknowledged that he was a strict parent to his older children but denied having ever acted abusively.

In November 2020, Rebecca moved to modify the April 16, 2020, temporary parenting plan, seeking custody of A.M. The court acknowledged that the GAL's interim report provided a significant history of abuse regarding the other children and said "the court cannot ignore the fact that this child has resided in the home where such concerning behaviors occurred and whether or not she was the subject of the abuse or merely a witness, [A.M.] is fearful." The court granted Rebecca's motion and issued a new temporary parenting plan, awarding custody of A.M. to Rebecca with the caveat that A.M. had to continue residing with Bass and promptly begin therapy. The court reserved making any findings under RCW 26.09.191. The court granted visitation to both Jody and Rebecca on alternating weekends.

On January 7, 2021, the court again amended the temporary parenting plan. The court noted that it "typically reserves findings pursuant to RCW 26.09.191 for the trial court" but, in this case, the court received enough evidence to find that both parents had committed both physical and repeated emotional abuse and both had a history of domestic violence. The court was concerned, based on the interim report, Jody's responsive declaration, and Dr. Hedrick's reports, that Jody lacked insight into the damage his behavior had caused and that he failed to recognize the gravity of his behavior and its significant effects. The court found that "[e]ven if it is true that the father has not physically abused [A.M.], the Court still has concerns that the father may still be emotionally abusive."

The court ordered that A.M. "shall reside with the mother so long as the mother is monitored by Marisa Bass. If there are times when Ms. Bass is unable to monitor the mother's residential time, the child will stay in Ms. Bass' care in the same way that a parent may allow a child to stay in daycare when the parent is at work." The order further dictated that all parenting time should be supervised.

Jody's visitation with A.M. appears to have gone well. Multiple visitation reports noted that they have a natural rapport, are able to maintain age-appropriate conversations, and appear to have a good relationship.

On April 20, 2021, Garrett submitted the final GAL report. This report included updates regarding the new parenting plan and the parents' progress with their court-ordered domestic violence assessments and therapy. Garrett reported that A.M. was thriving while living with Bass but that A.M. believed her mother had made positive changes and wanted to live with her mother and Joseph. According

to the report, A.M. was comfortable spending time with Jody when others were present and wanted visitation with him but did not feel safe staying the night with Jody and did not want to live with him. The final GAL report recommended, among other things, that Rebecca be designated the primary parent and that Jody's parenting time remain supervised.[2]

On April 30, 2021, the parties entered into a mediated CR 2A agreement, which addressed the remaining issues in their divorce and included a proposed final parenting plan. While the parents had previously acknowledged court findings related to their history of physical and emotional abuse and domestic violence, the agreed proposed parenting plan presented to the court lacked this acknowledgement. They asked the court to approve a plan designating Rebecca as the primary custodian, granting Jody unsupervised residential time every other weekend, and allowing joint decision-making.

On June 9, 2021 the parties appeared before the court and asked the trial court to enter their proposed final orders, including the agreed proposed parenting plan. The GAL objected, arguing that the parenting plan was not in the child's best interest. Both Rebecca and Jody urged the court to sign the order over these objections. Jody acknowledged that the GAL had the right to object to their proposed plan but argued that, because the GAL was not a party to the case, the court had the authority to disregard the GAL's report and any GAL objections.

---

[2] Jody again filed a response to the GAL report, calling Garrett confrontational, biased, and "deceitful."

The trial court denied their request and ordered the parties to proceed to a contested trial on the issue of the parenting plan. At trial, the court allowed Garrett to testify, to call witnesses, and to cross-examine the parents' witnesses.

The trial court heard testimony from three of Jody and Rebecca's adult children–Joseph, Brendan, and Angelique. These witnesses described the physical and emotional abuse they experienced while growing up. All three testified they were worried about A.M.'s safety and believed their parents would abuse her. And all three testified that A.M. had told them she was afraid to be alone with Jody. Joseph testified that his parents had previously punished A.M. using a leather belt and a switch and that Rebecca sometimes pinched her to the point of bruising. He acknowledged he had not seen either parent hit A.M. with a belt in four years. A.M. did not testify.

Jody admitted he had been a strict parent, but insisted that his conduct was not abuse. He admitted to hitting his children with a leather belt or a switch— including lining them up and hitting them all at the same time—but he denied the specific instances of abuse recounted by his children.[3]

Jody also presented testimony and domestic violence evaluations from two separate evaluators, Michael Shults and Susanne Ruiz Rodriguez, who concluded that Jody was not a perpetrator of domestic violence. Jody argued in closing that his corporal punishment was not abuse but reasonable and permissible discipline under RCW 9A.16.100.[4] The court disagreed, finding the discipline Jody used on

---

[3] For example, Brendan testified that his father once hit him with a 2x4 board, which Jody denied, testifying "there is simply no way that that happened."

[4] RCW 9A.16.100 provides that a parent may physically discipline a child provided that the action is "reasonable and moderate."

his children was unreasonable. It found credible the children's testimony that Jody had abused them.

The trial court found that both parents had committed physical and repeated emotional abuse of a child and that both parents had a history of domestic violence. It designated Rebecca as the primary custodian and granted her sole decision-making authority. The court also imposed a transitional residential schedule under which Jody was required to complete treatment before advancing to unsupervised visitation with A.M.

Jody appeals.[5]

## ANALYSIS

A.   The trial court did not abuse its discretion in rejecting the parents' agreed proposed parenting plan

Jody first argues the trial court erred in refusing to sign the parties' agreed final parenting plan. He contends the trial court had the discretion to disregard the GAL's objections to their agreed plan and that failing to do so violated his right to due process. We disagree.

In Washington, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09.002. In developing and ordering a permanent parenting plan, the court exercises broad discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). We review the parenting plan ultimately adopted by the court for abuse of discretion. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 1362

---

[5] After Rebecca failed to file a responsive brief or to respond to this court's correspondence, Jody asked this court to consider the matter without a response brief. We granted that motion.

(1997). A trial court abuses its discretion when a decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* at 46-47.

Jody first contends the trial court had the discretion to disregard the GAL's objections. We agree. The trial court is not bound by a GAL's recommendations. *In re Marriage of Magnuson*, 141 Wn. App. 347, 350, 170 P.3d 65 (2007); *In re Marriage of Swanson,* 88 Wn. App. 128, 138, 944 P.2d 6 (1997).

It does not necessarily follow, however, that the court must disregard the GAL's recommendations and sign an agreed parenting plan over the GAL's objections. Under RCW 26.12.175, when a court appoints a GAL in a family law matter, the GAL is there to represent the interests of the minor child. The GAL is statutorily obligated to "always represent the best interests of the child." RCW 26.12.175(1)(b). The court must independently assess the GAL's evidence, just as it assesses the evidence presented by the parents. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 28, 144 P.3d 306 (2006). The trial court had the discretion to reject a proposed parenting plan that the court did not find to be in A.M.'s best interest. The parents' failure to acknowledge their history of abuse or domestic violence and to address A.M.'s fears of spending unsupervised time with her father were tenable reasons for rejecting the parents' agreed parenting plan.

Jody next contends that the trial court erred in concluding that the GAL was a party to the proceeding and argues that its decision to conduct a contested trial violated the parents' due process rights. While we agree that the appointment of a GAL under RCW 26.12.175 does not make that GAL a named "party" in a family

court proceeding, the court has the discretion under court rules to allow the GAL to testify at trial, to call witnesses to testify, and to cross examine witnesses.

When Garrett objected to the entry of the agreed parenting plan, Jody argued that a GAL was not a party to the proceeding and urged the court to move forward with the proposed plan. The court responded that

> I think [Jody] accurately framed the issue . . . [T]he question is, is the GAL a party? And the—the nature of a GAL under both the statute—and by that I'm referring not only to RCW 26, but also RCW 13—but also the rules regarding the conduct of a GAL—the answer to that question is found within those. And the answer to that is, yes, the GAL is a party once the GAL is appointed.
>
> . . . .
> [T]he nature of this proceeding is the GAL is a party with a specific assignment, which is detailed in the order . . . appointing the GAL.

The court further noted

> the role of the Court is not to simply rubber-stamp anyone's proposed parenting plan. Even if this parenting plan had come in through an agreed dissolution . . . with an agreed parenting plan, it is still the role of the Court to review it. And even when it's agreed, the Court can simply say, no, we're going to have a hearing, slash, trial as it relates to what is in the best interests of the child under RCW 26.09.191, 183, and 187. And that's where we are.

Indeed, the trial court itself expressly recognized that it was not bound by the GAL's recommendations, stating, "As I said at the start of this, I'm nobody's rubber stamp. *Not the GAL's*, not the parties', not the lawyers'" (emphasis added). RP 628.

After deciding to reject the parents' agreed parenting plan, the trial court said:

> So, what's going to happen now is that we will proceed to a contested trial on the issue of the parenting plan. And specifically, I will be hearing evidence. . . . And I examined very carefully the role of the GAL in this case to determine the process by which the GAL would move forward. I looked at RCW 26, the—the appointment

process. I looked at RCW 13 in terms of the roles and responsibilities. And I looked also specifically at the role of the GAL as defined by court rule.

And if we look at the Superior Court rules as it relates to guardian ad litem, specifically Subsection 4, and specifically 4—Subsection 4(h)—"In every case in which a guardian ad litem is a party to the case"—notice how that's phrased in the rule— "pursuant to RCW 13.34 or RCW 26.26, a guardian ad litem shall have the rights and powers set forth below." The rights and powers are subject to all applicable statutes and court rules—shall have the right to file pleadings, motions, notices, memoranda, briefs, or other documents, may, subject to the court's discretion, engage in a response to discovery, introduce exhibits, and examine witnesses. A guardian ad litem shall have the right to—subject to the—"subject to the court's discretion, to introduce exhibits, subpoena witnesses, and conduct direct and cross-examination of witnesses." I think that lays out very clearly where we are.

The trial court's reliance on GALR 4(h) was misplaced because that rule does not apply to family law proceedings. GALR 4(h) provides:

> **(h) Additional rights and powers under RCW 13.34 or RCW 26.26.** In every case in which a guardian ad litem is a party to the case pursuant to RCW 13.34 or RCW 26.26, a guardian ad litem shall have the rights and powers set forth below. These rights and powers are subject to all applicable statutes and court rules.

The rule then lists the GAL's right to file pleadings, note motions, request hearings, introduce exhibits, examine witnesses, and submit reports. GALR 4(h)(1)-(4).

But this dissolution proceeding was not a proceeding under either RCW 13.34 or RCW 26.26. Chapter 13.34 RCW governs child dependency proceedings; Chapter 26.26 RCW (now codified as RCW 26.26.A and 26.26B) governs parentage proceedings. Parenting plans in dissolution proceedings, where parentage is undisputed, are governed by Chapter 26.09 RCW.

Although GALR 4(h) did not apply here, GALR 2 and King County Local Family Law Rule 13(a)(4) both give a trial court the authority to allow a GAL to

- 11 -

participate in a parenting plan trial. Under GALR 2, a GAL must represent the best interests of the person they are appointed to represent. GALR 2(a). They must make reasonable efforts to become informed about the facts of the case and to contact all parties. GALR 2(g). They must file a written report with the court, be given notice of all hearings and proceedings, and appear at any hearing for which the duties of the GAL are being addressed. GALR 2(i)-(l).

King County LFLR 13(a)(4) allows the court to appoint a "child advocate" who may be a GAL, who "shall receive copies of all documents that are to be served on parties, copies of all discovery, and notice of all hearings, presentations and trials." The trial court here had the discretion to permit this GAL, as A.M.'s "child advocate," to object to the parents' agreed parenting plan and to participate at trial.

Jody does not explain how his due process rights were violated by the decision to hold a contested trial or to allow the GAL to participate in that trial. Parents enjoy fundamental liberty interests in the custody and care of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), *In re Dependency of K.N.J.*, 171 Wn.2d 568, 574, 257 P.3d 522 (2011). But this parental right is subject to limitations to protect the child. *Wisconsin v. Yoder*, 406 U.S. 205, 233-34, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972). RCW 26.09.191(2) and (3) reflect the legislature's recognition of this fact. RCW 26.09.191 provides that a trial court may preclude a parent's residential time altogether if certain factors exist. *See In re Marriage of Underwood*, 181 Wn. App. 608, 611, 326 P.3d 793 (2014). This statutory scheme balances a parent's right

to the care, custody, and companionship of their children with Washington's interest in protecting the best interest of the child.

The Fourteenth Amendment ensures that a parent's rights are not abridged without due process of law. *In re Welfare of Key*, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). Due process requires that parents have notice, an opportunity to be heard, and the right to be represented by counsel. *Id.* at 611. Alleged due process violations are reviewed de novo. *In re Dependency of W.W.S.*, 14 Wn. App. 2d 342, 353, 469 P.3d 1190 (2020).

In this case, Jody participated in the trial and was aware of the possibility that the court would impose parental restrictions. He knew in advance of trial that the GAL recommended limits on his residential time because of his history of abuse. He was represented by counsel throughout trial, had the opportunity to present witnesses and evidence, to cross examine any witness called by the GAL or Rebecca, and to challenge the credibility of these witnesses. Jody presents no reasoned argument to support his assertion that his due process rights were violated.

B.   The trial court's residential restrictions under RCW 26.09.191 are supported by substantial evidence

Jody next argues the court erred in finding that he engaged in child abuse and domestic violence. Because there is sufficient evidence in the record to support the trial court's findings, we reject this claim.

We will uphold challenged findings supporting .191 restrictions as long as they are supported by substantial evidence. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). "Substantial evidence is the quantum of evidence

sufficient to persuade a rational, fair-minded person the premise is true." *Id.* In determining whether substantial evidence supports a trial court's finding, "'[w]e do not reweigh or rebalance competing testimony and inferences even if we may have resolved the factual dispute differently.'" *In re Marriage of Bundy*, 12 Wn. App. 2d 933, 938, 460 P.3d 1111 (2020) (quoting *Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013)).

Jody contends there is insufficient evidence to prove he committed physical abuse or a pattern of emotional abuse of A.M. or that he has a history of domestic violence as to A.M. He argues that "an indefinite lookback period is unreasonable and unworkable" and that the .191 factors should be limited to his parenting of A.M., not his disciplining his other children years in the past. We disagree.

First, RCW 26.09.191(2)(a) provides that the court "shall" limit a parent's residential time with "the child," if the parent "has engaged" in "physical, sexual, or a pattern of emotional abuse of a child," or has "a history of acts of domestic violence . . ." This statutory language is broader than Jody contends and does not limit .191 restrictions to situations where a parent has abused "the child," but whenever a parent has abused "a child." Nor does the statute limit residential time only when domestic violence has affected the child at issue. Instead, the statute imposes such restrictions whenever the court determines there is "a history" of domestic violence. RCW 26.09.191(2)(n) gives the court the discretion not to impose these limits if the court

> expressly finds . . . that contact between the parent and the child will not cause physical . . . or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the

- 14 -

child's best interests to apply the limitations of (a), (b), . . . of this subsection, or if the court expressly finds that the parent's conduct did not have an impact on the child . . .

The trial court found that Jody abused or threatened to abuse a child, both physically and emotionally. It also found that Jody had a history of domestic violence. It made no express finding that this past abusive conduct was unlikely to recur or that Jody's conduct had no impact on A.M.

Second, there is substantial evidence in the record to support a finding that Jody abused A.M. Joseph and Brendan both testified that their parents used a leather belt and switch on A.M. Garrett testified that A.M. disclosed to her that Jody and Rebecca hit her with a belt and had physically punished her and that she was afraid of them. A.M. reported that her parents had also belittled, demeaned, and isolated her. Garrett and Joseph testified that Jody once broke down A.M.'s door after she had asked him to stop waking her up early in the morning and that she had employed a doorstop to prevent him from doing so. Garrett explained that this behavior had frightened A.M. Jody admitted that he had used corporal punishment on A.M. in the past.

Jody argues that he had abandoned the use of corporal punishment and that the findings of abuse or domestic violence are inappropriate here. He also urges us to adopt the findings of his two evaluators, Shults and Rodriguez, both of whom concluded that there was no evidence of a pattern of domestic violence warranting intervention. But the trial court considered this evidence and nevertheless found that Jody had engaged in both abuse and domestic violence. On appeal, we do not review credibility determinations or reweigh the evidence.

- 15 -

*In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). And because the trial court hears the evidence firsthand and has a unique opportunity to observe the witnesses, we are "'extremely reluctant to disturb child placement dispositions.'" *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d 1280 (2001) (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wn.2d 39, 940 P.2d 1362 (1997)).

The trial court's findings are supported by substantial evidence and satisfy the requirements of RCW 26.09.191.

We affirm.

Andrus, C.J.

WE CONCUR:

Díaz, J.

Coburn, J.